IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VALAUGN D. GRIGGS, | ) | |
| | ) | CASE NO. 1:17CV1707 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN DAVID MARQUIS, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Valaugn Griggs ("Petitioner" or "Griggs") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Griggs is detained at the Richland Correctional Institution, having been found guilty by the Lake County, Ohio, Court of Common Pleas, following a bench trial, of ten counts of robbery.  Doc. 7-1, p. 11.[1]  *State v. Griggs*, Case No. 14CR000456 (Lake Cty. Common Pleas Ct. filed October 16, 2014).  The trial court merged the applicable counts and sentenced Griggs to an aggregate prison term of seventeen years.  Doc. 7-1, pp. 16-17.

On July 19, 2017, Griggs filed his Petition for Writ of Habeas Corpus setting forth three grounds for relief.  Doc. 1.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, Griggs's Petition is barred by the statute of limitations.  Thus, the undersigned recommends that Griggs's Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED**.

**I. Factual Background**

---

[1] Doc. page citations are to ECF Doc. page numbers.

1

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008). The Lake County Court of Appeals, Eleventh Appellate District of Ohio, set forth the facts as follows:[2]

> {¶ 4} Henry Ivezzy, Griggs' stepbrother, testified regarding his participation with Griggs in four robberies, explaining that his testimony was given in cooperation with the State. On the weekend prior to June 2, 2014, Griggs told Ivezzy he needed money to pay bills and brought up the idea of doing a robbery. On June 2, Griggs told Ivezzy that he and another person had robbed a GP Express in Parma, using a gun.
>
> {¶ 5} On June 2, shortly after 1 p.m., Meghna Patel was working in her husband's gas station, GP Express. Two black males came in, one holding a gun, and ordered her to give them her money. The one without the gun grabbed the drawer and put it in a bag.
>
> {¶ 6} Patel testified that she later looked at a photo lineup. During this testimony, there was a discussion on the record that the State was unaware of a photo lineup and it had not been provided by police, and, thus, had not been provided in discovery to Griggs' counsel. Defense counsel moved to dismiss "if there is an actual identification of somebody other than my client." Detective Thomas Connor met with the parties off the record and indicated that someone other than Griggs, who was part of the photo lineup, had been identified. Testimony regarding this issue was permitted.
>
> {¶ 7} Connor testified that after Griggs was arrested, he generated a photo lineup with Griggs' picture, which was shown to Patel by another detective, John Porec. Porec presented the photo lineup to Patel, she selected an individual in the lineup, and Porec returned the lineup to Detective Connor. Connor explained that some records relating to the lineup had been misplaced and he was unsure why the prosecutor had not received this information prior to trial.
>
> {¶ 8} After Porec's testimony, cross-examination of Patel resumed. She testified that the signature on the copy of the photo lineup in evidence was her husband's. She did testify, however, that she reviewed a photo lineup and selected an individual who was not Griggs.
>
> {¶ 9} Detective Connor then testified that he did show either Patel or her husband still shots from the robbery in Macedonia but that no photo lineup was prepared other than the one showed to Meghna Patel.

---

[2] The facts are taken from the Eleventh District Court of Appeals' decision. Griggs has not demonstrated by clear and convincing evidence that the state court's factual findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

{¶ 10} Michael Rolle, who works at the Fraternal Order of Police located near GP Express, testified that on June 2, while sitting inside of his parked car, he saw two black men wearing hats and carrying a "package" running to a silver Mercedes with temporary tags in the area of the nearby DMV parking lot. He identified the car as an E Class Mercedes after calling a dealer and describing it. He also noted that he saw a police canine follow the robbers' path from the gas station to where the Mercedes had been parked.

{¶ 11} Alexis Eon, a Verizon Wireless analyst, testified that, on June 2, 2014, at approximately 1:04 p.m., a phone call was placed from Griggs' cell phone, which pinged off of a cell phone tower located on Pearl Road in Parma Heights. At 1:23, a phone call pinged off of another tower, on Pearl Road in Cleveland. Police officer testimony confirmed that these cell towers were within a couple miles of GP Express.

{¶ 12} After Griggs told Ivezzy that he had received $1,000 from the Parma robbery, Ivezzy decided to also participate in robberies. The two agreed to split the money obtained equally.

{¶ 13} According to Ivezzy, on June 2, at approximately 7:50 p.m., the two men went to a Speedway in Macedonia. Griggs asked an employee inside for directions to a liquor store, the two men exited, waited for customers to leave, and reentered. Ivezzy began to purchase a Mountain Dew, pulled out a gun, and robbed the cashier. Ivezzy, pursuant to Griggs' instruction, took the whole drawer and put it in a pillowcase held by Griggs. Ivezzy testified that the gun used in the robbery was a BB gun that belonged to Griggs.

{¶ 14} Anesha Rogers, a Speedway employee, testified that the man in a yellow hoodie (which Ivezzy admitted was him), came to the register to make a purchase, held a gun toward her and asked for money. Both men threatened to shoot her before taking the entire cash register tray. Regarding Griggs, Rogers believed that he looked "similar" to the second man who robbed the store but she could not positively identify him.

{¶ 15} Fingerprints recovered by the Macedonia police were tested by Sarah Pivovar, a forensic scientist at BCI. She was able to determine that fingerprints found on the Mountain Dew bottle were Ivezzy's, but fingerprints found on a plastic bag and the money tray did not belong to Ivezzy or Griggs.

{¶ 16} Later on June 2, the pair robbed the Ohio Gas gas station in Wickliffe, following a similar pattern as the prior robbery. They entered, requested directions, exited, returned, and began to purchase items. Ivezzy then pulled out the gun and took the money tray when the register was opened, which was placed in the pillowcase held by Griggs.

¶ 17} Timothy Gordon, an employee at Ohio Gas, testified that, at around 10:00 p.m. on June 2, two men came into the store, asking for directions. They left and returned, purchasing gum and a Black and Mild cigar. The men placed money on the counter, Gordon opened the drawer, and the man wearing a yellow hoodie with the word "Thiel" on it, pushed a gun into his chest, telling him not to move. One of the men grabbed the tray from the drawer and put it into a bag. Both men wore hats and sunglasses.

{¶ 18} Anthony DiDona, a Patrolman at the Wickliffe Police Department, responded to the Ohio Gas robbery. He was flagged down near the gas station and told two black males were running eastbound, but no suspects were located that night.

{¶ 19} Dr. Karen Zavarella, a DNA analyst at the Lake County Crime Laboratory, testified that the DNA evidence collected from the gas station door by the Wickliffe Police Department did not have sufficient DNA to perform an analysis.

{¶ 20} Eon testified that, less than 45 minutes before the Wickliffe robbery, calls made from Griggs' cell phone placed it near a tower in Wickliffe.

{¶ 21} Lieutenant Pat Hengst of the Wickliffe Police Department performed an investigation of the robbery. Hengst believed, from watching videos of several robberies, he could identify Griggs as one of the robbers, based on his facial features.

{¶ 22} Hengst disseminated photographs of the suspects and was contacted by an officer from Mentor, who provided the photograph to the football coach at Thiel College. This led to an investigation of Ricardo Mardamus, who was eventually excluded as a suspect based on his lack of a vehicle matching the description and an alibi.

{¶ 23} Wickliffe Police Detective Dan Moreland stated that another reason for ruling out Mardamus was that, although some individuals such as his coach believed he may have been the robber without the gun, that man had no facial hair, while Mardamus had thick facial hair, which was present three days after the robberies.

{¶ 24} Chief of the Thiel College Police Eric Allen testified for the defense. Allen became aware that a suspect in the robberies was wearing a Thiel sweatshirt and explained that Thiel College is a small private college in Pennsylvania. Allen provided the name of Mardamus as a potential suspect. Allen believed Mardamus may have committed the robberies based on the fact that he drove a silver or green Chrysler 300 similar to the initial police description, and the man in the videos of the robbery, holding the money bag, resembled him.

{¶ 25} Hengst later received an anonymous tip leading to the discovery of Ivezzy's identity. Hengst verified that Ivezzy was working from 11:30–3:00 p.m. on June 2. Ivezzy's employer verified that he wore a Thiel sweatshirt like the one in the robbery, as well as the same hat. During questioning, Ivezzy revealed Griggs' identity and involvement in the robberies, which led to his arrest.

{¶ 26} Following the robberies on June 2, Ivezzy and Griggs went to Horseshoe Casino to gamble. Mickey Atchley, a gaming enforcement agent, verified the men's presence based on casino records.

{¶ 27} According to Ivezzy's testimony, on June 4, the two robbed a Sunoco in Independence. They followed the same pattern of initially entering the store to "case" it,

4

exited, and then performed the robbery, pointing the gun at the cashier, removing the register drawer, and placing the money in a pillowcase.

{¶ 28} Frank Kordas, a Sunoco employee, described the robbery and stated that the gun was held to his stomach. No physical evidence was recovered by the Independence Police Department.

{¶ 29} On June 6, the two men robbed Star Value in Cleveland at a little after 2:00 p.m., which followed the same fact pattern as the prior robbery, according to Ivezzy and employee Michael Napier.

{¶ 30} Eon testified regarding a text message exchange between Ivezzy and Griggs' phones at approximately 12:20 p.m. on June 6, where Griggs inquired as to Ivezzy's location, Ivezzy responded "at the crib," and Griggs stated he was "about to pull up."

{¶ 31} Surveillance camera video of varying quality was played and submitted into evidence from the robberies the two men committed together, which was generally consistent with Ivezzy's description of the robberies.

{¶ 32} Griggs' mother, Toni Griggs–Ivezzy, testified for the defense that she believed committing robberies was not in Griggs' character. She was surprised Griggs and Ivezzy had been spending time together because of incidents that occurred in the past.

{¶ 33} At the conclusion of the testimony, Griggs' counsel made a Crim.R. 29 motion and a motion to dismiss under *Brady* based on the fact that the defense did not receive the results of the lineup. These were denied by the trial court.

{¶ 34} On October 14, 2014, the court found Griggs guilty of each of the ten counts of Robbery, as charged in the Indictment. It found him not guilty of Engaging in a Pattern of Corrupt Activity. This verdict was memorialized in an October 16, 2014 Judgment Entry.

*State v. Griggs*, 2015 WL 6951584, at *1-4 (Ohio Ct. App. Nov. 9, 2015).

## II. Procedural Background

### A. State Trial Court

On August 8, 2014, a Lake County Grand Jury issued an indictment charging Griggs with five counts of second degree robbery, R.C. § 2911.02(A)(2), five counts of third degree robbery, R.C. § 2911.02(A)(3), and one count of engaging in a pattern of corrupt activity, R.C. § 2923.32(A)(1). Doc. 7-1, pp. 3-7. Griggs, through counsel, pleaded not guilty. Doc. 7-1, p. 8.

Griggs waived his right to a jury trial. Doc. 7-1, p. 10. Following a three-day bench trial, Griggs was found guilty of all 10 counts of robbery and not guilty of engaging in a pattern of corrupt activity. Doc. 7-1, pp. 12-13. The trial court merged each third degree robbery count with the second degree robbery counts (Count 2 merged with Count 1, Count 4 merged with Count 3, Count 6 merged with Count 5, Count 8 merged with Count 7, and Count 10 merged with Count 9) and sentenced Griggs to two years in prison for Count 1, three years for Count 3, and four years each for Counts 5, 7, and 9, to be run consecutively, for a total prison sentence of 17 years.

### B. Direct Appeal

On December 17, 2014, Griggs, through new counsel, appealed to the Ohio Court of Appeals. Doc. 7-1, p. 18. He presented the following assignments of error:

> 1. The judge found, against the manifest weight of the evidence, that the Appellant committed the acts alleged in the indictment (*T.P. at 975, paragraph 17*).
>
> 2. The evidence was not legally sufficient to sustain a guilty verdict (*T.P. at 975, paragraph 17*).
>
> 3. The trial court abused its discretion by imposing a prison sentence contrary to R.C. 2929.14 and the purposes and principles of the felony sentencing guidelines and erred by imposing consecutive sentences (*T.P. at 55, paragraph 12*).

Doc. 7-1, pp. 32-33. On November 9, 2015, the Ohio Court of Appeals affirmed Griggs's convictions and sentence. Doc. 7-1, pp. 95-123.

Griggs did not appeal to the Ohio Supreme Court.

### C. Rule 26(B) Application for Reopening

On January 27, 2016, Griggs, pro se, filed an application to reopen his direct appeal pursuant to Rule 26(B). He alleged that his appellate counsel was ineffective for failing to raise the following assignments of error:

6

> 1. Appellate Couns[]el failed to raise assig[n]ment of error explaining how the Appellant was denied the effective assistance of trial counsel, violating the Appellant's sixth and f[o]urteenth Amendments rights, as well as, Ohio Rules of Professional Conduct 1.3 (Diligence) and 1.4 (Communication)
>
>> A. Appellate counsel did not raise winning issues regarding trial counsel's failure to object to all testimony of phone pings from witnesses not deemed or qualified as experts, in direct violation of Crim. R. 16(K) Expert Witness, Fed. R. Ev. 702, OH R. Ev. 702, and Ev. R. 901(B)(9).
>>
>> B. Appellate counsel did not raise assignment of error regarding trial counsel's failure to object to State's Exhibit No.9 (Apple i-phone), which was irrelevant evidence under Ev. R. 402 (Irrelevant Evidence is Inadmiss[i]ble).
>>
>> C. Appellate counsel did not raise assignment of error pointing to trial counsel's failure to move for Rule 29/Mistrial on the solid grounds of conflicting testimony of the States witnesses which was contradicted by physical documentary evidence and equated to Perjury in violation of R.C. 2921.11 – Tampering with Evidence 2921.12 (A)(1)(2) and Falsification 2921.13.
>>
>> D. Appellate counsel was ineffective because he failed to exploit trial counsel's ineffectiveness in failing to make a motion for a mistrial & request for a co[]ntinuance based on the appropriate grounds.
>
> 2. Appellate counsel did not raise assignment of error Prosecution Misconduct Prosecution withholding evidence and not disclosing witnesses is violative of Crim. R. 16 and Due Process.
>
> 3. If the court concludes the individual errors are harmless which are cited herein (1 Sec, A-D & 2, 3) the Appellant request reversal based on "the cumulative error analysis" enu[n]ciated in State v. Demarco, 31 Ohio St. 3d 191 and State v. Gardner (1995) 74 Ohio St. 3d 49.

Doc. 7-1, pp. 120-127. On March 24, 2016, the Ohio Court of Appeals denied Griggs's application to reopen. Doc. 7-1, pp. 142-147.

On April 25, 2016, Griggs, pro se, appealed to the Ohio Supreme Court. Doc. 7-1, p. 154. In his memorandum in support of jurisdiction, he set forth the following propositions of law:

> 1. The Defendant, in a criminal matter is entitled to effective assistance of counsel at trial and on appeal. Here, the Defendant's Sixth Amendment right to effective assistance of counsel was violated in accord with Strickland v. Washington during trial and on appeal

7

when trial counsel failed to raise specific errors and objection, and appellate counsel failed to raise trial counsel's errors. Strickland v. Washington, 466 U.S. 668.

2. Appellant was denied Due Process in violation of the Fifth Amendment of the U.S. Constitution, suffered a violation of Crim. R. 16 and a Brady violation when the State Prosecutor withheld exculpatory evidence that could have clear[e]d Mr. Griggs of the crimes.

Doc. 7-1, p. 154. On June 29, 2016, the Ohio Supreme Court declined to accept jurisdiction.

Doc. 7-1, p. 196.

### F. Federal Habeas Petition

On July 19, 2017, Griggs, *pro se*, filed a Petition for a Writ of Habeas Corpus. Doc. 1, p. 9. He listed the following grounds for relief:

**Ground One:** Appellate counsel failed to raise assignment of error explaining how the Appellant was denied the effective assistance of trial counsel, due to trial counsel failing to object, move for a mistrial and request for a continuance.

**Supporting facts**: (1) Appellate counsel did not raise winning issues regarding trial counsel's failure to object to all testimony of phone pings from witnesses not deemed or qualified as experts. (2) Appellate counsel did not raise assignment of error regarding trial counsel's failure to object to State's Exhibit 13. (3) Appellate counsel did not raise an assignment of error pointing to trial counsel's failure to move for a Rule 29/Mistrial on solid grounds of conflicting testimony of State's witnesses. (4) Appellate counsel was ineffective because he failed to exploit trial counsel's ineffectiveness in failing to make a motion for continuance after being surprised by exculpatory evidence on Day 2 of the trial.

**Ground Two:** Appellate counsel did not raise an assignment of error concerning prosecutor misconduct.

**Supporting facts**: Tr.P. 812-842 shows a clear image of missing photo line-ups and unknown witnesses not disclosed to defense. Prosecution has knowledge of at least one photo-lineup that is exculpatory to the defendant but still has not disclosed to appellate and is withholding and withheld. The police are a part of the prosecution.

**Ground Three:** Appellate counsel failed to raise commu[l]ative error analysis.

**Supporting facts**: (A) Cumulative error analysis constituting to reversal. (B) Appellate court stated in the entry in response to application to re-open pursuant to App.R. 26(B) that analysis only applies in the trial court?

Doc. 1, pp. 4-7. Respondent filed a Motion to Dismiss, arguing that Griggs's Petition is barred by the statute of limitations. Doc. 7. Griggs did not file a response and the time within which to do so has passed.

## II. Law and Analysis

### A. AEDPA Statute of Limitations

Respondent contends that Griggs's Petition is barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244, limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus and provides, in relevant part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts. *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003) (citing 28 U.S.C. § 2244(d)(2)). This statutory tolling provision, however, does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a

9

clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (internal quotations and citation omitted).

"An application for post-conviction or other collateral review is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, e.g., requirements concerning the form of the document, the court and office in which it must be lodged, payment of a filing fee, and applicable time limits upon its delivery." *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) (citing *Artuz v. Bennett*, 531 U.S. 4, 8-10 (2000)). A post-conviction petition deemed untimely pursuant to Ohio law is not "properly filed" and, therefore, does not toll the statute of limitations. *Id*. at 771-772; *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (a petition is not "properly filed" when the state courts reject it as untimely pursuant to state law).

**B. Griggs's Petition is Barred by the One-Year Statute of Limitations**

The one-year statute of limitations began to run when Griggs's case became final.[3] 28 U.S.C. § 2244(d)(1)(A). Griggs's case became final on December 24, 2015, because the Ohio Court of Appeals affirmed his conviction and sentence in his direct appeal on November 9, 2015, and Griggs had forty-five days to appeal to the Ohio Supreme Court, which he did not do. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (when a petitioner does not appeal to the state's highest court on direct review, the case becomes final under § 2244(d)(1)(A) when the time period to do so expires); S.Ct.Prac.R. 7.01 (notice of appeal to perfect a jurisdictional appeal to the Supreme Court of Ohio shall be filed within 45 days from the entry of judgment being appealed). Thus, the statute of limitations began to run the day after his case became final,

---

[3] As noted, Griggs did not file a response to Respondent's motion. Thus, he did not argue that any other section of 28 U.S.C. § 2244(d)(1) applies to his case.

December 25, 2015. *See Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000) (AEDPA statute of limitations period starts running the day after the triggering event or default).

Thirty-three days later, on January 27, 2016, Griggs filed his Rule 26(B) Application. This filing tolled the limitations period until the Ohio Supreme Court denied Griggs's leave to appeal on June 29, 2016. *See Lawrence v. Florida*, 549 U.S. 327, 332-333 (2007) (there is no tolling under § 2244(d)(2) for the ninety day period to apply for writ of certiorari to the Supreme Court following the state's denial of post-conviction or other collateral relief); *Lopez v. Wilson*, 426 F.3d 339, 349 (6th Cir. 2005) (a Rule 26(B) Application to reopen is collateral relief, citing *Morgan v. Eads*, 818 N.E.2d 1157, 1158 (Ohio 2004)). Thus, the limitations period, of which 332 days remained, began running again the day after the Ohio Supreme Court denied Griggs's leave to appeal, June 30, 2016. It expired on May 28, 2017.

Griggs filed his federal habeas petition on July 19, 2017, 52 days too late.

**C. Griggs provides no basis for equitable tolling**

A petitioner is entitled to equitable tolling when he has been pursuing his rights diligently and some extraordinary circumstance prevented him from timely filing his habeas petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace*, 544 U.S. at 418). The petitioner bears the burden of establishing entitlement. *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). A petitioner may also be entitled to equitable tolling "if he demonstrates actual innocence so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice." *Patterson v. Lafler*, 455 Fed. App'x 606, 609 (6th Cir. 2012) (citing *Murray v Carrier*, 477 U.S. 478, 495-496 (1986)). "A valid claim of actual innocence requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id*. (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). "The evidence must demonstrate factual innocence, not mere

11

legal insufficiency." *Id*. (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)). The Supreme Court recently underscored that "the miscarriage of justice exception . . . applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933 (2013) (quoting *Schulp*, 513 U.S. at 329). The timing of an actual innocence claim "seriously undermine[s] the credibility" of such a claim. *Id*. at 1936.

In his Petition, Griggs provided no basis for equitable tolling. He did not file a response to Respondent's motion to dismiss and the time period to do so has passed. Accordingly, Griggs has not demonstrated that he is entitled to equitable tolling.

### III. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Petitioner's habeas Petition should be **DISMISSED** as time-barred.

Dated: January 23, 2018

Kathleen B. Burke
United States Magistrate Judge

### **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).